**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| In Re: | § | |
| | § | |
| **FIRED UP, INC.** | § | Case No. 16-10816 |
| | § | (Chapter 11) |
| Debtor. | § | |
| | § | |

**EMERGENCY MOTION FOR AUTHORITY TO USE, SELL, OR LEASE CASH COLLATERAL IN THE ORDINARY COURSE, PROVIDE ADEQUATE PROTECTION AND FOR PRELIMINARY HEARING**

TO THE HONORABLE JUDGE OF SAID COURT:

**Fired Up, Inc.** ("Debtor"), Debtor in the above-styled and referenced case, hereby files this Emergency Motion Pursuant to 11 U.S.C. § 363 for Authority to Use, Sell, or Lease Cash Collateral in the Ordinary Course, Provide Adequate Protection and for Preliminary Hearing (the "Motion") and in support thereof respectfully states the following:

1. By this Motion, the Debtor seeks interim and final relief allowing it to use cash collateral in the continuing operation of its business.

**JURISDICTION AND PROCEDURAL BACKGROUND**

2. On July 14, 2016 (the "Petition Date"), Debtor filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the Western District of Texas, Austin Division ("Court"), thereby commencing this chapter 11 case ("Case"). Debtor continues in possession of its property and it is operating and managing its business as a debtor in possession pursuant to the provisions of 11 U.S.C. §§ 1107(a) and 1108.

3. No trustee or examiner has been appointed in the Debtor's Chapter 11 Case, nor has a creditors' committee or other official committee been appointed pursuant to 11 U.S.C. § 1102.

4. The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

5. The basis for the relief herein is primarily grounded in 11 U.S.C. §§ 105(a) as supplemented and amplified by Fed. R. Bank. P. 6003.

## THE DEBTOR'S BUSINESS

**Overview**

6. Fired Up, Inc. ("Fired Up") is a corporation based in Austin, Texas, which has been involved in the hospitality industry since 1997. As of the Petition Date, it owns thirty-six (36) (company-owned stores ("Company Stores") known as Johnny Carino's Italian ("Carino's") in six (6) states (Texas, Arkansas, Colorado, Louisiana, Idaho and Missouri) and forty-eight (48) franchised or licenses locations in fourteen (14) states (California, Indiana, Kentucky, Michigan, Montana, New Mexico, North Dakota, Oklahoma, Oregon, South Dakota, Tennessee, Texas, Utah and Washington) and four other countries (Bahrain, Dubai, Egypt and Kuwait) ("Franchisees" or "Franchised Stores"). It is currently operating thirty-five (35) of the Company Stores. Carino's focuses on providing high quality classic but contemporary, innovative Italian cuisine at an exceptional value in an authentic Italian atmosphere to a broad demographic--from intimate "date nights" for young singles to large family gatherings.

7. Fired Up currently employs approximately 2,060 persons in its restaurants and corporate headquarters. Creed Ford III is the majority shareholder of Fired Up and also sits on

2

its Board of Directors in addition to serving as President and sole Chief Executive Officer since 2008.

**Company History**

8. Creed Ford III ("Ford" or "Creed Ford") and Norman J. Abdallah formed Fired Up, Inc. in 1997 for the purposes of acquiring the Kona Restaurant Group from Brinker International, Inc. ("Brinker"). By 2006, Fired Up had expanded the Carino's concept to 173 company-owned and franchised locations in thirty (30) states and four (4) foreign countries.

9. By 2007, however, revenue had begun slipping and guest counts were down. The 2008 recession created significant additional challenges for the Company. In the fiscal year ending June 25, 2008, the Company reported a net loss of $15.9 million. In January of 2011, Ford arranged the redemption for $16 million of the preferred shares of the Debtor held by Rosewood Capital, an investor in the Company; the redemption was financed with a loan from FRG Capital, LLC, a company owned by the Ford family.

10. As a result of changes instituted by management under Ford's direction, the Company subsequently experienced several profitable years. By the end of the fiscal year ending June 26, 2013, however, the Company reported a net loss of $5.9 million as a minority of its Company-owned stores were consistently losing significant amounts of money. Ford instituted a comprehensive review of Fired Up's sixty-five (65) company-owned stores and closed a total of nineteen (19) locations between October of 2013 and March of 2014.

11. Even with the closing of unprofitable stores, Fired Up still had debt which had been accruing during its unprofitable years and did not have the immediate cash flow that would have been required to repay it all in a relatively short period of time. In order to reorganize and repay this debt in an orderly manner, it filed a chapter 11 proceeding in this Court on March 27,

2014, under Case No. 14-10447 ("First Case"). A joint plan and amended joint plan of reorganization were filed by Fired Up along with the Official Unsecured Creditors Committee appointed in the Case. An Order confirming the Amended Plan with modifications ("Confirmed Plan") was entered on December 19, 2014. Briefly, the Confirmed Plan provided for all debts to be repaid as set forth therein by the Debtor except for general unsecured debt, including damages resulting from the rejection of unexpired leases of real property. Claims falling into this category were repaid by distributions from an independently-operated General Unsecured Creditors Trust ("GUC Trust") funded by $4.48 million in cash and the assignment of certain causes of action from Fired Up.

12. The First Case was substantially consummated and closed on March 31, 2016. All payments that were the responsibility of Fired Up were and continue to be made except those to FRG Capital, an affiliated entity which agreed to forego payments on or about June 1, 2015, for the reasons set forth below. The GUC Trust distributed approximately 23.91% of Allowed Claims to Unsecured Creditors.

13. The Company's financial performance post-First Case Confirmation was drastically affected by pressure in the marketplace through value added marketing and a consumer shift away from sit down casual dining. Additionally, actual revenues were severely impacted by exogenous factors which significantly affected the national economy post-confirmation. Revenues were also down and continued to decrease because of the severe decline in the price of oil and gas and corresponding cutbacks and closings in the oil and gas industry. Stores were closed primarily because lease terms on multiple unprofitable stores expired and were not worth renewing and others because of the economy. Expenses were generally in line with projections except for benefits and marketing: the impact of "Obama care"

4

was greater than anticipated with respect to the former and marketing expenses were higher than projected because more kept being spent in order to attract customers into the restaurants. In order to keep current on operating expenses and Confirmed Plan payments, Fired Up borrowed an additional $3,891,000.00 from FRG Capital between April 1, 2015, and December 31, 2015..

**Financial Information**

14. Fired Up owns no real property assets at this time. Its locations are leased. Debtor holds seven long-term ground leases and owns the buildings on these ground leases, which are valued at $1.4 million. The Debtor estimates the book value of its tangible personal property assets at approximately $ 3,502,500. The Debtor also holds significant intangible property, including trademarks and other intellectual property. The company estimates that it currently owes $ 19,060,789 in contractual secured debt, including $12,569,051 to FRG Capital, LLC, $740,369 to Independent Bank of Waco and $5,137.986.00 to Prosperity Bank. The company owes $180,237.00 in delinquent *ad valorem* taxes, which consist of unpaid 2015 *ad valorem* taxes that accrued after the First Case. Debtor has current priority obligations to employees consisting of approximately $600,000.00 in wages, $231,000.00 in accrued vacation time and $74,000 in bonuses earned and owed. The Debtor owes $ 1,407,765 in priority tax claims--$ 613,383 in remaining plan payments from the First Case and post-confirmation taxes of $794,382.00: all plan payments for priority taxes are current and the unpaid post-confirmation taxes do not include any trust fund taxes. The Company's current unsecured debt is estimated at $1.55 million, which includes $169,000 of unpaid rent and approximately $$286,000 owed to three of its landlords for property taxes. This amount, however, very likely overstates the Debtor's actual liabilities as most of it is current and, with Court permission, will continue to be paid in the ordinary course of business.

15. For the fiscal year ending June 25, 2014, the Company reported total revenues of $110 million and a net loss of $5.6 million. Guest counts for this period totaled 7 million. For the fiscal year ending December 30, 2015, the Company reported total revenues of $86 million and a net loss of $5.5 million.[1] Guest counts equaled 7 million. Annualized gross sales for the Company Stores for 2016 are expected to be approximately $74 million. As of December 30, 2015, Net Operating Cash Flow was negative $2.7 million.

**Reasons for Filing Bankruptcy**

16. As discussed above, the Company's best-laid plans in its First Case have been thwarted largely by the economy and negative changes in the casual dining marketplace which resulted in their First Case projections being overly optimistic. In the early part of 2016, it began exploring ways to sell most, if not all, of its locations and liquidate assets that are not being used so as to maximize repayment to remaining creditors. This has involved negotiating with landlords for the early termination of leases with little, if any penalty and a reduction of rent in some cases. It has also been involved in negotiations with various groups interested in purchasing some or all of its assets.

**Going Forward**

17. Fired Up anticipates most of its current locations will be sold to one of two groups. The leases on at least two locations will be rejected if the potential purchasers do not choose to include them.

### FACTUAL BACKGROUND ON NECESSITY FOR REQUESTED RELIEF

18. The following parties hold secured claims against the Debtor which may give rise to cash collateral:

---

[1] Fired Up changed over to a December year end from a June year end. It therefore had a six-month stub year from June 26, 2014 to December 24, 2014. Additionally, the year ending December 30, 2015, was a 53-week year, which may skew these numbers somewhat.

| Creditor | Debt Amount | Store # | Collateral | Insider? | First Perfection Date*/State |
|---|---|---|---|---|---|
| FRG Capital, LLC | $12,569,051.00 | N/A | All personal property wherever located, including but not limited to goods, equipment, inventory, accounts receivable and intellectual property. (Lien subordinated to Prosperity Bank) | Yes | TX 1/8/16 |
| Independent Bank | $416,279.00 | #78 | Machinery, equipment, furniture, fixtures, and other tangible personal property and proceeds located at 3050 Silverlake Village Drive, Pearland, Texas | No | TX 02/11/2009 |
| Independent Bank | $324,090.00 | N/A | $450,000 CD owned by Creed and Lynn Ford | No | N/A |
| Prosperity Bank | $1,637,986.00 | N/A | All accounts, accounts receivable, documents, instruments, chattel paper, general intangibles, intellectual property, equipment, machinery, inventory, and fixtures | No | TX 1/30/15 (assignment of lien held by GE Capital filed on 6/17/08 and continued on 4/9/13) |
| Prosperity Bank | $3,500,000.00 | N/A | $3.5 million CD owned by Creed and Lynn Ford and 6,193,090 s/s of Fired Up, Inc. owned by Creed and Lynn Ford | No | N/A |

19. In addition to the contractual secured creditors, Debtor owes delinquent *ad valorem* taxes on personal property owned in the amount of $109,848 and unliquidated amounts that are not yet due. Debtor also has a Certificate of Deposit which is pledged to secure a letter of credit for the Debtor's previous workers compensation and general liability insurance policies.

20. Debtor generates Cash Collateral from the operation of its business when it generates proceeds and credit card accounts from sales of food and beverages on a daily basis in the ordinary course of its business. The assets likely to give rise to Cash Collateral consist of inventory of food and beverages, accounts receivable generated from sale of food and beverages

7

and identifiable cash proceeds resulting from sale of food and beverages. On the other hand, it is Debtor's contention that furniture, fixtures, equipment, computers, software and real estate do not give rise to Cash Collateral. Until a plan of reorganization is confirmed in this case, Debtor must obtain approval for the use of the Cash Collateral. It is critical for Debtor to have access to its cash and other business property to continue to operate in the ordinary course of business and to pay normal operating expenses.

21. Debtor can meet its ongoing post-petition obligations only if it borrows funds post-petition or obtains authority for use of Cash Collateral. It believes the former will decrease the value of its business. Debtor believes the latter is preferable as it has generated multiple projections and believes it is able to cash flow post-petition if it has the funds available from or generated by its pre-petition cash collateral to pay its post-petition expenses. Thus, in order to continue operations as normal and to preserve the value of the estate pending confirmation of a plan of reorganization, Debtor needs immediate authority to use the Cash Collateral.

### ARGUMENTS AND AUTHORITIES IN SUPPORT OF REQUEST FOR TEMPORARY AND FINAL USE OF CASH COLLATERAL

22. Debtor requires immediate authority from the Court to use the Cash Collateral in the ordinary course of its business and on an interim basis until there is a final hearing on this Motion.

23. Debtor requests the authority to use cash collateral to operate its business.

24. Under 11 U.S.C. §363(c)(2), the Debtor may not use, sell, or lease the Cash Collateral without the Court's authority or consent. Section 363(e) allows the Court to grant this authority upon the provision of adequate protection to the secured parties.

25. Debtor requires the continued authority to use Cash Collateral beyond the interim period in order to continue its business and maintain the Property until it is sold and to confirm a

8

plan of reorganization as quickly as possible. Debtor's need to use the Cash Collateral will continue during the pendency of this bankruptcy case.

26. Debtor also requests that this Court schedule a hearing for final approval on the use of Cash Collateral, on notice to creditors and parties in interest, in the event an objection is filed to the terms of the interim order.

27. The immediate and temporary approval for the use of the Cash Collateral is consistent with (i) Bankruptcy Code requirements for maintaining the going concern of a debtor's business operations; (ii) the law under 11 U.S.C. §§ 363 and 361 as to the use of cash collateral and adequate protection; and (iii) facilitating a successful reorganization under chapter 11 of the Bankruptcy Code.

28. The failure to authorize the immediate use of Cash Collateral on which the secured parties hold liens will result in a swift and significant deterioration of Debtor's business. Failure to gain authority to use, sell, or lease such collateral will result in a cessation of Debtor's business activities, which would expose Debtor to additional liability and would leave unsecured creditors with little hope of distribution in this case.

29. The Bankruptcy Code contemplates a debtor's use of collateral during the reorganization of its business. Sections 102(1) and 363 of the Bankruptcy Code provide that collateral may be used upon notice and opportunity for a hearing appropriate in the particular circumstances. Relief may be authorized without an actual hearing if there is insufficient time available and adequate protection has been provided. 11 U.S.C. § 363(e). The combination of Debtor's emergency needs to satisfy pending obligations and current operating needs, together with the provision of adequate protection are sufficient to authorize the interim use of the collateral as set forth herein.

30. Section 361 of the Bankruptcy Code sets forth various types of adequate protection which Debtor may provide:

    a. making periodic cash payments to the extent that the creditor suffers a decrease in the value of its interest in such property;

    b. granting replacement liens in collateral to compensate the creditor for any decrease in the value of the creditor's interest in such property; or

    c. granting other relief as will result in the realization of the indubitable equivalent of the creditor's interest in collateral.

31. Debtor proposes to provide adequate protection to all parties with an interest in Cash Collateral in the following manner:

    a. All creditors with an interest in Cash Collateral will be granted a replacement lien to the same extent, priority and validity as its pre-petition lien:

    b. The Debtor will continue to operate its business in the ordinary course of business thus generating additional Cash Collateral; and

    c. Debtor will maintain insurance upon the property giving rise to the Cash Collateral.

    d. Debtor will continue to make the regular contractual payments on its debts to Prosperity Bank.

32. Debtor requests permission to pay its usual and customary operating expenses of the same type and approximate amounts set forth on the attached budget for the month of July 2016.

**REQUEST FOR EMERGENCY HEARING**

33. Debtor requests that the Court schedule an emergency hearing on the Motion.

WHEREFORE, Debtor requests that the Court authorize the use, sale, or lease of Cash Collateral on an interim basis and, upon setting and conducting a final hearing, issue a final order authorizing the use, sale, or lease of such cash collateral with the adequate protection to the

secured parties as set forth herein; and grant any other and further relief to which Debtor is entitled.

Dated: July 14, 2016.

Respectfully Submitted,

BARRON & NEWBURGER, P.C.

/s/Stephen W. Sather
Barbara Barron (SBN 01817300)
Stephen W. Sather (SBN 17657520)
1212 Guadalupe St Ste 104
Austin, Texas 78701-1837
Telephone: (512) 476-9103
Facsimile: (512) 476-9253

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing Application was served by first class mail, postage prepaid and properly addressed, on July 14, 2016, to all parties listed on the attached Service List and electronically by the Court's ECF system to all parties registered to receive such service.

/s/Stephen W. Sather
Stephen W. Sather

**FIRST MASTER SERVICE LIST**
*(July 14, 2016)*

**United States Trustee:**

Henry G. Hobbs,
Deborah Bynum
Office of the U.S. Trustee
903 San Jacinto Blvd., Room 230
Austin, TX 78701
henry.g.hobbs@usdoj.gov
deborah.a.bynum@usdoj.gov

**Debtor:**

Creed Ford, III
President/CEO
Ford Restaurant Group
1514 RR 620 South
Austin, TX 78734
cford@carinos.com

Margaret B. Smith, CPA
Director of Finance
Ford Restaurant Group
1514 RR 620 South
Austin, TX 78734
msmith@fordrestgrp.com

**Proposed Professionals for Debtor:**

Barbara M. Barron
Stephen W. Sather
Barron & Newburger, P.C.
1212 Guadalupe Street, Suite 104
Austin, TX 78701
bbarron@bn-lawyers.com
ssather@bn-lawyers.com

Kareem Hajjar
Hajjar Peters, LLP
3144 Bee Caves Rd.
khajjar@legalstrategy.com

**Proposed Professionals for Debtor (cont'd):**

John Vernon
The Vernon Law Group, PLLC
4925 Greenville Avenue, Suite 200
Dallas, TX 75206
jvernon@vernonlawgroup.com

Unique Strategies
c/o Dan Bensimon
5810 Tom Wooten Dr.
Austin, TX 78731
dbensimon@austin.rr.com

Eric Drews
13901 Midway Rd., Suite 102-278
Dallas, TX 75244
eric@redrews.com

**Secured Creditors:**

FRG Capital, LLC
c/o Blake Rasner
Haley & Olson, P.C.
510 N. Valley Mills Drive, Suite 600
Waco, TX 76710
brasner@haleyolson.com

Prosperity Bank
Attn: Tim Cardinal
1415 RR 620 South
Austin, TX 78734
tim.cardinal@prosperitybankusa.com

Prosperity Bank
c/o Lisa C. Fancher
Fritz, Byrne, Head & Harrison, PLLC
98 San Jacinto Blvd., Suite 2000
Austin, TX 78701-4286
lfancher@fbhh.com

**Secured Creditors (cont'd):**

Independent Bank of Waco
Attn: Charley Rigney
P.O. Box 21145
Waco, TX 76702
crigney@ibtx.com

Independent Bank of Waco
c/o Steve Turner
Barrett Daffin Frappier Turner, et al
610 West 5th Street, Suite 602
Austin, TX 78701
stevet@bdfgroup.com

Fifth Third Bank
P.O. Box 630900
Cincinnati, OH 45263-0900

**Twenty Largest Unsecured Creditors:**

Prosperity Bank
Attn: Tim Cardinal
1415 RR 620 South
Austin, TX 78734
tim.cardinal@prosperitybankusa.com

Internal Revenue Service
P.O. Box 7346
Philadelphia, PA 19101-7346

Gordon Food Service
11303 Antoine Drive
Houston, TX 77066
Jessica.henderson@gfs.com

Texas Comptroller of Public Accounts
c/o Jason A. Starks
Assistant Attorney General
Revenue Acct. Division-Bankruptcy
P.O. Box 13528
Austin, TX 78711-3528
jason.starks@texasattorneygeneral.gov

**Twenty Largest Unsecured Creditors (cont'd):**

ARC CAFÉ, LLC
American Realty Capital
Attn: Cindy Dip
200 Dryden Road, Suite 1100
Dresher, PA 19025
cdip@arlcap.com

ARC CAFE, LLC
c/o Jeffrey T. Wegner
Kutak Rock, LLP
1650 Farnam Street
Omaha, NE 68102-2186
jeffrey.wegner@kutakrock.com

Centerra Marketplace Properties
c/o McWhinney Mgmt Co., LLC
2725 Rocky Mountain Ave., Ste. 200
Loveland, Co 80538
evank@mcwhinney.com

The Coca Cola Company
William Kay, Sr. Bankruptcy Advisor
P.O. Box 1734
NAT 2008
Atlanta, GA 30313
nesmiller@coca-cola.com
billkaye@jllconsultants.com

Freshpoint
P.O. Box 816211
Dallas, TX 75381
felicia.cobb@freshpoint.com

Leeco Energy & Investments
3501 Billy Hext Road
Midland, TX 79765
larryglee@leecoproperties.com

Texas Workforce Commission
Attn: Regulatory Integrity Division-SAU
101 E. 15th Street, Room 556
Austin, TX 78778-0001
rid.taxbankruptcy@twc.state.tx.us

# FIRST MASTER LIMITED SERVICE LIST

*(July 14, 2016)*

**Twenty Largest Unsecured Creditors (cont'd):**

Mary Jane Lawrence
9317 Brightwood Court
Northridge, Ca 91325
universalchiro@yahoo.com

Food Services of America
P.O. Box 839
Meridian, ID 83680
lee_clark@fsafood.com
boise_ar@fsafood.com

Tom & Joanne Sargis
Family Trust
55 Turnsworth Ave.
Redwood City, Ca 94062
tjsargis@comcast.net

Boise Spectrum – Dunlap, LLC
16897 Algonquin St., Ste. A
Huntington Beach, CA 92649
jan@dddunlap.com

National Retail Properties
450 S. Orange Ave., Ste. 900
Orlando, FL 32801
david.byrnes@nnnreit.com

Idaho State Tax Commission
1349 E. Beechcraft Ct.
Boise, ID 83716
taxrep@tax.idaho.gov

Base Jumper, LLC.
c/o Magic Valley Mall
1485 Pole Line Rd.
Twin Falls, ID 83301
chanie.adams@woodburycorp.com

**Twenty Largest Unsecured Creditors (cont'd):**

Commercial Net Lease Realty, Inc.
450 S. Orange Ave., Ste. 900
Orlando, FL 32801
kimberlie.cranford@nnnreit.com

Hoppenstein Properties, Inc.
P.O. Box 207
Waco, TX 76703-0207
vivian@hoppenstein.com

Kansas Dept of Revenue
915 SW Harrison St.
Topeka, KS 66612-1588
tac@kdor.ks.gov

**Additional Notice:**

Sheila Pattison
Special Assistant U.S. Attorney
Internal Revenue Service
300 E. 8th Street, Suite 601
Austin, TX 78701
sheila.pattison@irscounsel.treas.gov

Bexar County
c/o Hilia Gibson
Linebarger Goggan Blair & Sampson
711 Navarro St., Ste 300
San Antonio, TX 78205

Summit Energy
Attn: Tim Ward
25716 Network Place
Chicago, IL 60673-1257
tim.ward@ems.schneider-electric.com

# FIRST MASTER LIMITED SERVICE LIST
*(July 14, 2016)*

**Additional Notice (cont'd):**

CASS
2675 Corporate Exchange Drive
Columbus, OH 43231
estahleker@cassinfo.com


FinTech
Attn: Mandi Aiton
7702 Woodland Center Blvd., Suite 50
Tampa, FL 33614
maiton@fintech.com

**Profitablity Analysis**
**FIRED UP, INC. BUDGET**
Period 7 FY16 - June 30, 2016 - August 3, 2016

| | Yr over Yr Trend | Jul-16 P7 - 5 Weeks |
|---|---|---|
| **Revenue** | | |
| **Sales by Store-35 Stores** | | |
| 082- Alexandria | -4.8% | $ 173,512 |
| 101- Amarillo | -18.7% | $ 113,555 |
| 045- Ammon | -6.8% | $ 203,954 |
| 112- Austin Slaughter | -7.8% | $ 138,499 |
| 089- Baytown | 0.3% | $ 177,205 |
| 055- Brodie | -11.7% | $ 136,228 |
| 038- Brownsville | -12.9% | $ 264,653 |
| 035- College Station | -11.8% | $ 147,579 |
| 041- Corpus Christi | -15.0% | $ 218,999 |
| 053- Denton | -12.2% | $ 152,689 |
| 054- Grand Prairie | -9.0% | $ 129,772 |
| 069- Houston 290 | -22.0% | $ 172,917 |
| 111- Hurst | -13.1% | $ 145,302 |
| 107- Joplin | -4.1% | $ 148,159 |
| 030- Katy | -12.4% | $ 168,163 |
| 034- Lake Jackson | -6.3% | $ 236,759 |
| 036- Laredo | -0.8% | $ 337,045 |
| 029- Little Rock | -19.3% | $ 162,656 |
| 057- Loveland | -3.9% | $ 220,916 |
| 021- Lubbock | -8.8% | $ 176,833 |
| 073- Meridian | 2.1% | $ 151,233 |
| 100- Midland | -17.8% | $ 194,603 |
| 105- Odessa | -19.5% | $ 155,102 |
| 075- Parmer Lane | 8.4% | $ 191,350 |
| 078- Pearland | -24.7% | $ 108,366 |
| 083- Pharr | -9.0% | $ 159,810 |
| 052- Rockwall | -9.0% | $ 146,645 |
| 056- Rogers | -5.7% | $ 160,645 |
| 065- SA 410 | -2.2% | $ 203,415 |
| 103- SA Military | -9.4% | $ 162,207 |
| 091- San Marcos | -4.2% | $ 186,416 |
| 049- Twin Falls | -5.3% | $ 174,358 |
| 040- Victoria | -7.5% | $ 164,373 |
| 031- Waco | -11.2% | $ 146,532 |
| 060- Waxahachie | 3.5% | $ 174,380 |
| | | |
| Company Total | -8.9% | $ 6,104,831 |

# Exhibit A

**FIRED UP, INC. BUDGET**
Period 7 FY16 - June 30, 2016 - August 3, 2016

|  |  | Yr over Yr Trend | Jul-16 P7 - 5 Weeks |
|---|---|---|---|
| **Direct Expenses** | Qtr Trend |  |  |
| Comps |  | 11.7% | $ 716,157 |
| Total COS |  | 23.9% | $ 1,456,257 |
| Tot Lab |  | 28.3% | $ 1,730,574 |
| Rest Exp |  | 3.5% | $ 216,331 |
| Facility |  | 7.5% | $ 456,654 |
| Oth Exp |  | 0.3% | $ 17,580 |
| *Total* |  |  | *$ 4,593,553* |
|  |  |  |  |
| Ttl Non Ccontrollable Expense |  | 7.8% | $ 477,518 |
| Ttl Bon & Benef. |  | 3.1% | $ 191,651 |
| Rent | $ 501,427 |  | $ 501,427 |
| Property Taxes | $ 121,435 |  | $ 121,435 |
| *Total* |  |  | *$ 1,292,030* |
|  |  |  |  |
| Total Cost Before G&A |  |  | $ 5,885,583 |
|  |  |  |  |
| Cash Flow from Stores |  |  | $ 219,247 |
| *% Margin* |  |  | *3.6%* |
|  |  |  |  |
| **General & Administrative** |  |  |  |
|  |  |  |  |
| Add: Franchise Royalties |  | 174,107 | $ 174,107 |
| Less: G&A excl Depr - details next page |  | (237,807) | $ (237,807) |
| Less Corp Debt Pymt -excl FRG Capital |  | (53,991) | (53,991) |
| Total Company Net Cash Flow |  |  | $ 101,557 |
| *% Margin* |  |  | *1.7%* |